UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>HUGO VASQUEZ-CORTINA,<br>Defendant. | Case No. 15-cr-00224-BLF-1<br><br>**ORDER GRANTING MOTION TO DISMISS INDICTMENT**<br><br>[Re: ECF 32] |

Defendant Hugo Vasquez-Cortina moves to dismiss the single-count indictment charging him with illegal reentry following deportation in violation of 8 U.S.C. § 1326. Defendant argues that his prior deportations were unlawful and therefore that the prior deportation element of the § 1326 offense cannot be established. The Court has considered the parties' briefing, the oral argument presented at the hearing on November 17, 2015, and the supplemental briefing filed on December 1, 2015 and December 4, 2015. The motion is GRANTED for the reasons discussed below.

**I.   BACKGROUND**

Defendant, a native and citizen of Mexico, has a long history of criminal convictions and immigration proceedings, which are summarized in relevant part as follows.

**May 22, 1997 Conviction of Driving Under the Influence**

On May 22, 1997, Defendant sustained a felony conviction of driving under the influence of alcohol with a prior conviction. 2010 Criminal Compl. ¶ 5, Pl.'s Exh. E1, ECF 35-2.

**January 20, 1998 Deportation**

On January 12, 1998, the Immigration and Naturalization Service ("INS") – now the

1  Bureau of Immigration and Customs Enforcement ("ICE") – placed Defendant in removal
2  proceedings.[1] *See* Def.'s Exhs. A-1 through A-4, ECF 32-1. The INS issued several documents
3  on that date, including a Notice to Appear indicating that Defendant was subject to removal under
4  INS § 212(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled,
5  or who arrived in the United States at any time or place other than as designated by the Attorney
6  General." Notice to Appear, Def.'s Exh. A-1, ECF 32-1. Neither the Notice to Appear nor any of
7  the other documents generated during the deportation proceedings referred to Defendant's 1997
8  conviction.

9  Defendant was taken to an immigration office in San Francisco, California, and then was
10 transported to Eloy, Arizona. Vasquez-Cortina Decl. ¶¶ 2-3, Def.'s Exh. A-6, ECF 32-1. In
11 Arizona, Defendant was given a document titled "Request for Prompt Removal," which he signed
12 on January 14, 1998. Vasquez-Cortina Decl. ¶ 3, Def.'s Exh. A-6, ECF 32-1; Req. for Prompt
13 Removal, Def.'s Exh. A-5, ECF 32-1. On January 20, 1998, Defendant appeared *pro se* at a group
14 deportation hearing along with other men that the government was seeking to deport. Hrg. Tr. at
15 1, Def.'s Exh. A-8, ECF 32-1. At the hearing, the Immigration Judge ("IJ") engaged in brief
16 colloquy with Defendant and then accepted Defendant's Request for Prompt Removal and ordered
17 that Defendant be deported. Hrg. Tr. at 3-4, Def.'s Exh. A-8, ECF 32-1; Order of the Immigration
18 Judge, Def.'s Exh. A-10, ECF 32-1. Defendant was deported to Mexico on the same date.
19 Warrant of Removal/Deportation, Def.'s Exh. A-11, ECF 32-1.

20 Defendant states in his declaration he was not informed that he was eligible for voluntary
21 departure in lieu of deportation, and that had he been so informed he would have elected to depart
22 voluntarily. Vasquez-Cortina Decl. ¶¶ 2-6, Def.'s Exh. A-6, ECF 32-1.

23 **May 1, 1998 Conviction of Misdemeanor Battery**
24 Defendant reentered the United States and on May 1, 1998 he was convicted of
25 misdemeanor battery. 2010 Criminal Compl. ¶ 6, Pl.'s Exh. E1, ECF 35-2.

---

[1] "On March 1, 2003, the INS ceased to exist as an agency under the U.S. Department of Justice and its functions were transferred to the Bureau of Immigration and Customs Enforcement within the newly formed [Department of Homeland Security]." *Marmolejo-Campos v. Holder*, 558 F.3d 903, 906 n.3 (9th Cir. 2009).

### April 5, 1999 Deportation

On March 9, 1999, the government reinstated the earlier January 20, 1998 deportation order. Notice of Intent/Decision to Reinstate Prior Order, Pl.'s Exh. B1, ECF 35-1; Warrant of Removal/Deportation, Pl.'s Exh. E2, ECF 35-1. Defendant was deported on April 5, 1999.

### December 11, 2003 Conviction of Preparing False Documentary Evidence

On December 11, 2003, Defendant was convicted of preparing false documentary evidence in violation of California Penal Code § 134. Abstract of Judgment, Def.'s Exh. C-2, ECF 32-1. He was sentenced to a three-year term of imprisonment, two years on the § 134 charge and an additional year on an enhancement. *Id.*

### March 4, 2005 Deportation

On March 1, 2005, Defendant was placed in removal proceedings. Notice to Appear, Def.'s Exh. D-2, ECF 32-2. The Notice to Appear issued on that date indicated that Defendant was subject to removal under INS § 212(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.* The Notice to Appear did not refer to Defendant's 2003 conviction.

Defendant was transported to Eloy, Arizona. Vasquez-Cortina Decl. ¶ 8, Def.'s Exh. A-6, ECF 32-1. Defendant states in his declaration that when he got to Eloy, there were three officials at the holding facility who organized Defendant and other detainees into three groups of approximately eight to ten people each. *Id.* Each official took charge of a group. *Id.* The official in charge of Defendant's group stated that the detainees were not eligible for relief and handed each detainee a Stipulated Request for Removal Order and Waiver of Hearing ("Stipulated Request"). *Id.* ¶ 9. The Stipulated Request handed to Defendant already had his name and certain other information typed in. *Id.* Defendant signed the Stipulated Request and stood in line with the other detainees. *Id.* ¶ 10. The Stipulated Request contained waivers of a number of rights, including the right to be represented by counsel and the right to seek voluntary departure, and an agreement that the removal proceedings could be disposed of by a written order. Stipulated Request, Def.'s Exh. D-8, ECF 32-2. The IJ issued a written Decision and Order on March 4,

3

2005, finding that Defendant was subject to removal as being "present without being admitted or paroled." Decision and Order, Def.'s Exh. D-10, ECF 32-2. Defendant never appeared before the IJ. *Id.* Defendant was deported on March 4, 2005. Warrant of Removal/Deportation, Def.'s Exh. D-11, ECF 32-2.

Defendant states in his declaration that during the above proceedings he was told repeatedly that no relief was available to him; nobody told him that he was eligible for voluntary departure in lieu of deportation; and if he had been offered voluntary departure he would have departed voluntarily as soon as possible. Vasquez-Cortina Decl., Def.'s Exh. A-6, ECF 32-1.

**2010 Conviction of Illegal Reentry**

On February 24, 2010, Defendant was charged by complaint with illegal reentry following deportation in violation of 8 U.S.C. § 1326. 2010 Criminal Compl., Pl.'s Exh. E1, ECF 35-2. Importantly for purposes of the discussion below, the complaint alleged that Defendant's December 11, 2003 conviction under California Penal Code § 134 was an aggravated felony. *Id.* ¶ 7. A felony information was filed on March 11, 2010. Docket, Pl.'s Exh. E-2, ECF 35-2. Defendant entered into a plea agreement providing for a sentence of twenty-one months imprisonment, a monetary assessment of $100, and three years of supervised release. Plea Agreement ¶ 8, Pl.'s Exh. E3, ECF 35-2. The plea agreement stated: "*On March 20, 2008*, I was convicted by the State of California for the offense of Preparing False Documentary Evidence, an aggravated felony, in violation of Section 134 of the California Penal Code." *Id.* ¶ 2 (emphasis added). Based upon that conviction, Defendant agreed to an 8-level increase in offense level. *Id.* Defendant entered a change of plea on April 15, 2010 pursuant to the plea agreement. Hrg. Tr., Pl.'s Exh. E5, ECF 45.

The government asserts that the plea agreement's reference to a March 20, 2008 conviction for violation of § 134 was a typographical error and that the intended reference was to Defendant's December 11, 2003 conviction for violation of § 134. The Court granted the government an opportunity to submit the transcript of the change of plea hearing in the hope that it would shed light on whether the March 20, 2008 date was a typographical error. The government has submitted that transcript; however, it recites the same March 20, 2008 date that appears in the

4

written plea agreement. Hrg. Tr. at 9, Pl.'s Exh. E5, ECF 45.

**September 7, 2011 Deportation**

On September 7, 2011, Defendant was deported pursuant to reinstatement of the January 20, 1998 deportation order. Notice of Intent/Decision to Reinstate Prior Order, Pl.'s Exh. F1, ECF 35-2; Warrant of Removal/Deportation, Pl.'s Exh. F2, ECF 35-2.

**November 21, 2011 Deportation**

On November 21, 2011, Defendant again was deported pursuant to reinstatement of the January 20, 1998 deportation order. Notice of Intent/Decision to Reinstate Prior Order, Pl.'s Exh. G1, ECF 35-2; Warrant of Removal/Deportation, Pl.'s Exh. G2, ECF 35-2.

**Current Indictment for Illegal Reentry under § 1326**

On April 15, 2015, the government commenced the present case by filing a criminal complaint alleging illegal reentry in violation of § 1326. Criminal Compl., ECF 1. On April 22, 2015, the grand jury issued an indictment containing a single count of illegal reentry. Indictment, ECF 7. The indictment alleges that the prior predicate deportations occurred on January 20, 1998, April 5, 1999, March 4, 2005, September 7, 2011, and November 21, 2011. *Id.* Defendant now moves to dismiss the indictment on the ground that those prior deportations were unlawful and thus cannot form the predicate for the § 1326 charge of illegal reentry.

**II. LEGAL STANDARD**

"For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted).

To mount a successful challenge to an indictment under § 1326, a defendant "must demonstrate that (1) he exhausted the administrative remedies available for seeking relief from the predicate removal order; (2) the deportation proceedings 'improperly deprived [him] of the opportunity for judicial review'; and (3) the removal order was 'fundamentally unfair.'" *Raya-*

5

*Vaca*, 771 F.3d at 1201 (quoting 8 U.S.C. § 1326(d)) (brackets in original).  "To satisfy the third prong – that the order was fundamentally unfair – the defendant bears the burden of establishing both that the deportation proceeding violated his due process rights and that the violation caused prejudice."  *Id.* (internal quotation marks, citation, and brackets omitted).

An IJ's failure to inform the alien of his apparent eligibility for discretionary relief "may be the centerpiece of a collateral challenge under § 1326(d)."  *United States v. Vidal-Mendoza*, 705 F.3d 1012, 1016 (9th Cir. 2013).  "A violation of this duty (1) excuses the alien from § 1326(d)(1)'s exhaustion requirement; (2) satisfies § 1326(d)(2)'s deprivation of judicial review requirement; and also (3) serves as a due process violation that goes halfway to demonstrating that the removal proceeding was 'fundamentally unfair,' as demanded by § 1326(d)(3)."  *Id.*

### III. DISCUSSION

The current § 1326 charge is predicated on Defendant's prior deportations on January 20, 1998, April 5, 1999, March 4, 2005, September 7, 2011, and November 21, 2011.  As discussed above, the April 1999, September 2011, and November 2011 deportations were pursuant to reinstatements of the January 1998 order; thus their validity depends upon the validity of the underlying January 1998 order.  *See United States v. Arias-Ordonez*, 597 F.3d 972, 981 (9th Cir. 2010) ("a valid reinstatement of an invalid removal order cannot transform the prior order into a valid predicate for an illegal reentry conviction").  Defendant's motion therefore turns on the validity of the January 1998 and the March 2005 orders.

#### A. Failure to Inform Defendant of Eligibility for Voluntary Departure

Defendant challenges both the January 1998 and March 2005 deportation orders on the ground that he was not informed of his eligibility for discretionary relief, specifically voluntary departure, in either proceeding.

Pursuant to 8 U.S.C. § 1229c(a), "[t]he Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense" in lieu of being removed.  8 U.S.C. 1229c(a).  Defendant cites a number of cases holding that a successful collateral attack may be mounted against an underlying removal order where the alien was not informed of his eligibility for voluntary departure.  *See, e.g.,United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir.

6

2004) (alien satisfies requirements for successful collateral attack on § 1326 conviction if he shows that IJ failed to inform him of eligibility for voluntary departure in lieu of removal and he in fact was eligible for voluntary departure); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004) ("The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is mandatory, and failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding.") (internal quotation marks, citation, and brackets omitted); *United States v. Lopez-Menera*, 542 F. Supp. 2d 1025, 1030 (N.D. Cal. 2008) (dismissing indictment for violation of § 1326 where IJ failed to inform defendant of eligibility for voluntary departure and defendant had plausible claim for voluntary departure).

Based upon the record of Defendant's immigration proceedings in 1998 and 2005, summarized above, the Court has no difficulty in concluding that this case falls squarely within the cited authorities and thus that the first two prongs of § 1326(d) and the due process aspect of the third prong are satisfied. The Court notes that the Stipulated Request that Defendant signed during the 2005 proceedings contained an express waiver of a number of rights, including the right to seek "*voluntary departure*, adjustment of status, suspension of deportation or cancellation of removal, registry, naturalization, political asylum, withholding of removal, and protection against the Convention Against Torture." Stipulated Request, Def.'s Exh. D-8, ECF 32-2 (emphasis added). However, Defendant's declaration regarding the circumstances under which he signed the Stipulated Request makes clear that he was not ever informed that he was *eligible* for voluntary departure. Defendant states that during the 2005 proceedings he was told repeatedly that no relief was available to him; nobody told him that he was eligible for voluntary departure in lieu of deportation; he was handed the form with his name and other information already filled in as he stood in a group of other aliens; he was expected to, and did, complete the form immediately; and then he stood in a line with other aliens to turn in the form. Vasquez-Cortina Decl. ¶¶ 8-10, Def.'s Exh. A-6, ECF 32-1. It is undisputed that Defendant was never brought before an IJ during the 2005 proceedings.

The government does not offer any evidence to contradict Defendant's declaration

statements, other than a report of an interview with an immigration official who was present during Defendant's 2005 deportation proceedings but who had no personal recollection of those proceedings. *See* Report of Investigation, Pl.'s Exh. D3, ECF 35-2. The official described his general practice of explaining "the stipulated removal process as well as other removal options or removal or relief of deportation to the detainees." *Id.* The report is insufficient to establish that Defendant was informed of his eligibility for voluntary departure during the 2005 proceedings or that those proceedings otherwise comported with due process. The government does not argue to the contrary. Instead, the government argues that Defendant cannot establish prejudice arising from any due process violation.

### B. Prejudice

The question, then, is whether Defendant can satisfy the prejudice aspect of the third prong of the § 1326(d) inquiry. To establish prejudice, a defendant "does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1050 (9th Cir. 2004). "Establishing plausibility requires more than establishing a mere possibility." *United States v. Cisneros-Rodriguez*, --- F.3d ----, No. 13-10645, 2015 WL 9309958, at *12 (9th Cir. Dec. 23, 2015) (internal quotation marks, citation, and brackets omitted). However, Defendant "'need not prove that relief was *probable*.'" *Id.* (citing *Raya-Vaca*, 771 F.3d at 1207). Defendant "needs to show that relief was more than 'possible' but [he] need not show that it was 'probable.'" *Id.* The burden is not a heavy one – the defendant "need only establish some evidentiary basis on which relief could have been granted." *Raya-Vaca*, 771 F.3d at 1207.

### 1. January 20, 1998 Deportation Order

The record does not reveal the existence of any circumstances that would have barred Defendant's eligibility for voluntary departure in January 1998 and the government does not challenge Defendant's assertion that he had a plausible ground for voluntary departure at that time. Because it appears that all three prongs of § 1326(d) are satisfied with respect to the January 20, 1998 deportation order, the Court concludes that that order was invalid and may not form the predicate for the current § 1326 charge. As discussed above, the invalidity of the January 20, 1998

order also renders invalid the April 1999, September 2011, and November 2011 deportations, which were pursuant to reinstatements of the January 1998 order. *See Arias-Ordonez*, 597 F.3d at 981.

### 2. March 4, 2005 Deportation Order

Defendant's motion thus turns on the validity of the March 4, 2005 deportation order. The government contends that Defendant cannot show prejudice resulting from the failure to inform him of eligibility for voluntary departure, because by the time the 2005 deportation proceedings occurred Defendant had become ineligible for that relief. "Voluntary departure is not available to an alien who has been convicted of an aggravated felony." *Vidal-Mendoza*, 705 F.3d at 1014 n.2 (citing 8 U.S.C. § 1229c(a)(1)). The government asserts that Defendant's 2003 conviction under California Penal Code § 134 constituted an aggravated felony that rendered him ineligible for voluntary departure from 2003 forward. Defendant contends that his 2003 conviction under § 134 was not an aggravated felony and therefore was not a bar to his eligibility for voluntary departure at the time of the 2005 deportation proceedings.

The term "aggravated felony" encompasses many types of offenses, enumerated in 8 U.S.C. § 1101(a)(43). The government contends that Defendant's § 134 conviction falls within § 1101(a)(43)(S), "an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(S). "[T]he question whether a specific offense of conviction counts as an aggravated felony under § 1101(a)(43)(S) depends exclusively on whether the elements of the offense . . . constitute the crime of obstruction of justice as that term is defined in the federal criminal law, U.S. Code Title 18, Chapter 73 (18 U.S.C. §§ 1501-1521)." *Salazar-Luviano v. Mukasey*, 551 F.3d 857, 861 (9th Cir. 2008) (internal quotation marks and citation omitted). If the elements of the offense of conviction do not match any of the specifically enumerated obstruction offenses in the United States Code, the offense of conviction constitutes an aggravated felony only if it falls within the "catchall" provision, 18 U.S.C. § 1503. *Id.* at 862.

In the present case, the government asserts that the elements of § 134 constitute the crime of obstruction of justice as defined in 18 U.S.C. § 1512(c). The government does not argue that §

9

134 matches any of the other enumerated obstruction offenses or that it falls within the catchall provision of § 1503. Accordingly, the Court's inquiry is limited to determining whether § 134 matches § 1512(c) under the test set forth below.

The Court engages in a three-step process to determine whether the offense of conviction constitutes the crime of obstruction of justice under federal law. *Almanza-Arenas v. Lynch*, No. 10-73715, 2015 DJDAR 13763, 13765 (9th Cir. Dec. 28, 2015); *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867 (9th Cir. 2015). First, the Court "compare[s] the elements of the state offense to the elements of the generic offense defined by federal law." *Lopez-Valencia*, 798 F.3d at 867. "If this 'categorical approach' reveals that the elements of the state crime are the same as or narrower than the elements of the federal offense, then the state crime is a categorical match and every conviction under that statute qualifies as an aggravated felony." *Id.* Second, if the state statute is broader than the federal statute such that it criminalizes conduct that goes beyond the elements of the federal statute, the Court determines whether the state statute is "divisible" or "indivisible." *Id.* at 867-68. If the state statute is indivisible, the inquiry is at an end because "a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense." *Id.* at 868 (internal quotation marks and citation omitted). If the state statute is overbroad and divisible, the Court takes the third step of engaging in a "modified categorical approach." *Id.* If the Court reaches the third step in the analysis it may "examine certain documents from the defendant's record of conviction to determine what elements of the divisible statute he was convicted of violating." *Id.*

### a. Step One – Whether there is a Categorical Match

Step one, determining whether a state criminal statute is categorically a match to a federal statute, itself involves a two-step process. *Almanza-Arenas*, 2015 DJDAR 13763, at 13765. "The first step is to identify the elements of the statute of conviction." *Id.* (internal quotation marks and citation omitted). "The second step is to compare the elements of the statute of conviction to the generic definition . . . and decide whether the conviction meets that definition." *Id.* (internal quotation marks and citation omitted).

To identify the elements of California Penal Code § 134, the Court applies California rules of statutory construction. *Almanza-Arenas*, 2015 DJDAR 13763, at 13765. "Under California

law, the cardinal rule of statutory construction is to determine the intent of the legislature." *Id.* (internal quotation marks and citation omitted). The Court therefore determines intent "by first looking to the language of the statute and giving effect to its plain meaning." *Id.* (internal quotation marks, citation, and brackets omitted). "If the intent of the legislature is not clear from the language of the statute, legislative history may be considered." *Id.* (internal quotation marks and citation omitted).

California Penal Code § 134, entitled "Preparing false documentary evidence," reads as follows:

> Every person guilty of preparing any false or ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of felony.

Cal. Penal Code § 134. The language of the statute shows that there are three elements of this offense: (1) a person prepared a false or ante-dated book, paper, record, instrument in writing, or other matter or thing (referred to collectively herein as "false or ante-dated document" for ease of reference); (2) the person intended to produce the false or ante-dated document, or to allow it to be produced, as genuine in "any trial, proceeding, or inquiry whatever, authorized by law"; and (3) the person had a fraudulent or deceitful purpose for the intended production of the false or ante-dated document.

In the Court's view, the second element, intent to produce or allow production of the false or ante-dated document in *any trial, proceeding, or inquiry whatever, authorized by law*, is significantly broader than the corresponding element of the federal statute that is asserted to be a categorical match. The federal statute, 18 U.S.C. § 1512, entitled "Tampering with a Witness, Victim, or an Informant," reads in relevant part as follows:

> (c) Whoever corruptly –
>
> > (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability *for use in an official proceeding*; or
> >
> > (2) otherwise obstructs, influences, or impedes *any official proceeding*, or attempts to do so,

11

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c) (emphasis added). The term "official proceeding" is limited to the following:

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce.

18 U.S.C. § 1515(a)(1) (defining "official proceeding" as used in § 1512).

Section 1512(c) thus criminalizes conduct *only* to the extent it is intended to, or does, affect a proceeding that falls within one of four enumerated categories: (a) a judicial or grand jury proceeding, (b) a proceeding before Congress, (c) a proceeding before a federal agency, or (d) an insurance regulatory proceeding. Section 134, in contrast, criminalizes conduct intended to affect "any trial, proceeding, or inquiry whatever, authorized by law." Consequently, it § 134 criminalizes conduct that would not constitute an offense under § 1512(c).

Defendant argues unpersuasively that this conclusion is illustrated by *People v. Clark*, in which the California Court of Appeal held that § 134 encompassed the defendant's preparation of a false document for use as evidence at a university grievance committee hearing. *See People v. Clark*, 72 Cal. App. 3d 80, 82 (1977). Defendant argues that a university grievance proceeding does not fall within one of the four categories of proceedings that define an "official proceeding" for purposes of § 1512(c), that is, (a) a judicial or grand jury proceeding, (b) a proceeding before Congress, (c) a proceeding before a federal agency, or (d) an insurance regulatory proceeding. In his supplemental brief, Defendant argues specifically that "there is no evidence that the university in *Clark* was a 'government agency.'" Def.'s Suppl. Reply at 2, ECF 47.

The government correctly points out that the university grievance proceeding in *Clark* was

a proceeding before a state agency. *See Clark*, 72 Cal. App. 3d at 82 n.2 (indicating that proceeding was pursuant to statutory provision governing faculty hearings at state colleges and universities); *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982) (California state colleges and universities are instrumentalities of the state for Eleventh Amendment purposes); *Lee v. Bd. of Trustees of Cal. State Univ.*, No. 15-cv-01713-CAS(PLAx), 2015 WL 4272752, at *7 (C.D. Cal. Jul. 14, 2015) (same).

Further, the fact that § 1512(c) applies to "a proceeding before a Federal Government agency" does not preclude a finding of a categorical match where a state agency is involved. The government properly argues that purely jurisdictional differences between federal and state statutes – for example, where a federal statute specifies that the conduct involve interstate commerce – do not preclude a categorical match. In *United States v. Castillo-Rivera*, 244 F.3d 1020 (9th Cir. 2001), the Ninth Circuit found a categorical match between federal and state statutes prohibiting felons from possessing firearms despite the fact that the federal statute required a nexus with interstate or foreign commerce while the state statute did not. The Ninth Circuit characterized the commerce element of the federal statute as "a mere jurisdictional requirement that is not meant to narrow the substantive offense of possession of a firearm by a felon." *Id.* at 1024. Defendant counters with cases from other circuits rejecting the reasoning of *Castillo-Rivera*. *See, e.g., Bautista v. Attorney Gen.*, 744 F.3d 54, 68-69 (3rd Cir. 2014) (holding that categorical match was precluded where federal arson statute required nexus with interstate commerce while state arson statute did not).

This Court is bound by the decisions of the Ninth Circuit, which recently relied on *Castillo-Rivera* to conclude that a categorical comparison of federal and state child pornography statutes need not consider the federal statute's commerce requirement because "a mere jurisdictional element does not render a federal statute narrower than a state statute for purposes of categorical inquiry." *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1007 n.2 (9th Cir. 2015). Thus if the only difference between § 1512(c) and § 134 were the former's jurisdictional requirement that the conduct occur in a proceeding before a "federal" agency, the Court would follow *Castillo-Rivera* to determine that such requirement does not preclude a categorical match. However, the

federal/state jurisdictional difference is not the only difference between the two statutes. As discussed above, § 1512(c) criminalizes conduct relating to only four enumerated categories of proceedings while § 134 is not limited to any particular type of proceeding.

Determining whether a state statue creates a crime outside the definition of the federal statute "requires more than the application of legal imagination to a state statute's language." *Chavez-Solis*, 803 F.3d at 1009 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). "It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* Defendant may show the requisite "realistic probability" by pointing to a case "in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Id.* (internal quotation marks and citation omitted). However, "that is not the only way." *Id.* "[I]f a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime." *Id.* at 1009-10 (internal quotation marks and citation omitted). "Accordingly, when a state statute's greater breadth is evident from its text, a petitioner need not point to an actual case applying the statute of conviction in a nongeneric manner." *Id.* at 1010 (internal quotation marks and citation omitted). "The petitioner may simply rely on the statutory language to establish the statute as overly inclusive." *Id.* (internal quotation marks and citation omitted).

Defendant argues that § 134's greater breadth is evident from its text. The Court agrees that the statutory language is expansive, criminalizing conduct relating to false statements for use in "*any* trial, proceeding, or inquiry *whatever*, authorized by law." Cal. Penal Code § 134 (emphasis added). That language is broad enough to include conduct falling outside the four categories encompassed by § 1512(c). For example, on its face § 134 would apply to an "inquiry" that is authorized by law but not raised in an official proceeding. Defendant suggests by way of example that use of false documents when making an inquiry under California Civil Code § 1786.16(a)(2) could give rise to a criminal charge under § 134. The Court agrees that § 1786.16, governing a private person's access to consumer information contained in investigative consumer

14

reports, reasonably could be construed to be an "inquiry" that is "authorized by law" within the meaning of § 134.[2] Given that example and, more importantly, given the broad statutory language of § 134 going beyond the specific types of proceedings encompassed by § 1512(c), the Court concludes that § 134 is not a categorical match to § 1512(c). *See Almanza-Arenas*, 2015 DJDAR 13763, at 13765 (finding section of California Vehicle Code to be broader than federal crime of moral turpitude based upon conclusion that California statute "is overbroad and criminalizes conduct that goes beyond the elements of the federal offense").

### b. Step Two – Whether the State Statute is Divisible or Indivisible

Having determined that § 134 is broader than § 1512(c), the Court next must determine whether § 134 is divisible or indivisible. The government does not argue that § 134 is divisible, and the Court has not discovered any authority suggesting that it is. Accordingly, the Court cannot proceed to a step three modified categorical match analysis.

### c. Conclusion

Because § 134 is not a categorical match to § 1512(c), and there does not appear to be any other basis for concluding that § 134 is an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(S), the Court concludes that Defendant's 2003 conviction under § 134 does not qualify as a conviction of an aggravated felony. Accordingly, the 2003 conviction would not have rendered Defendant ineligible for voluntary departure at the time of the 2005 removal proceedings. Because the record indicates that absent a bar raised by a prior aggravated felony Defendant had a plausible ground for voluntary departure at the time of the 2005 deportation proceedings, the Court concludes that Defendant has demonstrated prejudice arising from the failure to advise him of his eligibility for voluntary departure during the 2005 deportation proceedings. All three prongs of § 1326(d) having been satisfied with respect to the March 4, 2005 deportation order, the Court concludes that that order was invalid.

### d. Effect of 2010 Conviction of Illegal Reentry

The government contends that the records relating to Defendant's 2010 conviction of

---

[2] The Court notes that the government has not cited any case limiting application of § 134 to judicial or governmental agency proceedings.

15

illegal reentry establish that Defendant's 2003 conviction under § 134 qualifies as an aggravated felony. Specifically, the government argues that Defendant's plea agreement admitted that his 2003 conviction was an aggravated felony. As an initial matter, the government has not cited any authority for the proposition that Defendant's *2010* characterization of a prior conviction as an aggravated felony could affect the Court's determination whether that prior conviction qualified as an aggravated felony in *2005*. Even assuming that it could, Defendant's plea agreement in the 2010 case admitted that a prior *March 20, 2008* conviction under § 134 was an aggravated felony. Plea Agreement ¶ 2, Pl.'s Exh. E3, ECF 35-2. The plea agreement says nothing about Defendant's *December 11, 2003* conviction under § 134. The government argues that the use of the March 20, 2008 date was a typographical error and that the intended reference was to the December 11, 2003 conviction. However, there is no evidence in the record from which the Court could draw that conclusion. The transcript of the change of plea hearing recites the same March 20, 2008 date that appears in the written plea agreement. Hrg. Tr. at 9, Pl.'s Exh. E5, ECF 45. Accordingly, the Court concludes that the records relating to the 2010 conviction do not establish that Defendant's 2003 conviction under § 134 qualifies as an aggravated felony.

The government argues that Defendant's 2010 conviction for illegal reentry itself is an aggravated felony that bars the relief Defendant seeks here. However, the question before the Court is whether Defendant's *March 4, 2005 deportation* was valid such that it may form the predicate for the current § 1326 charge. As discussed above, it was not and it may not. The fact that five years after the relevant time frame Defendant was convicted of a crime that qualifies as an aggravated felony is irrelevant to the present motion.

### C.  Defendant is Entitled to Dismissal of Indictment

Because Defendant has established that his prior deportations were unlawful and cannot constitute predicates for the current § 1326 charge, Defendant is entitled to dismissal of the indictment in this case.

//

//

//

16

**IV. ORDER**

 (1) Defendant's motion to dismiss the indictment is GRANTED; and

 (2) Defendant shall be released from the custody of the United States Marshals Service.

Dated: December 29, 2015

_____
BETH LABSON FREEMAN
United States District Judge